Case number 144212 United States of America v. Christopher D. Rarick. Arguments not to exceed 15 minutes. Mr. Gartner, the appellant. May it please the court, your honor, may I reserve five minutes for rebuttal. Your honor, the first search of the defendant's phone, Chris Rarick's phone, was overly broad. And because it was overly broad, it was not a good warrant. The second item is that the manner of the search was unreasonable and, we say, unconstitutional. I'm sorry, your first statement was what was overly broad, the search or the warrant? I didn't hear you. Excuse me, the affidavit for the search warrant and the search warrant, the documents themselves, they were overbroad. And I have them here and I'm looking at them, the court also has them. If you look at this two-page affidavit, just looking at the affidavit itself, it says all information within the above listed items and or devices including but not limited to and then it lists a lot of data, you know, what type of data. Then it goes to paragraph two, any and all communications in electronic form including but not necessarily limited to email, chat, capture, captured files, goes on and on. Then it goes any and all electronic data contained in the device's memory as well as other internal, external, removable data. And again, it goes on and on. Finally, two more paragraphs stating what type of information and then it says, all other fruits and instrumentalities of crime at the present time unknown. The cases, I mean, I had the same reaction, like, oh my God, this is like so broad. But don't the cases say that, well, the first thing you do is you look at that authorization in the context of the rest of the affidavit so it limits it to looking for evidence of this particular crime meaning something on the phone showing what was filmed or recorded audio and that you can have a really broad warrant for electronics because you don't know where it's going to be. I mean, I thought the cases sort of allow that. Your Honor, I would disagree especially on this case. This case is driving under suspension which is a misdemeanor and obstructing official business which is a misdemeanor too, lesser than driving under suspension which means that someone hinders or somehow interferes with an officer's duties. And we know the date. The date is specific, you know, that this occurred. It happened on February 14, 2003 and I looked at the search warrant, I looked at the affidavit, I looked at, there was another document here, an attachment and the date was not even in there. Now, what and not only that, the last paragraph of the application, you know, I told you about any evidence of any crime, that's in there and then lastly the officer testified that he was searching for everything in the warrant or everything in the cell phone, everything. He made no bones about it. Now... Wait, didn't he say that he pulled up the videos and then sort of scrolled through looking for the video that looked like the event? That's the second argument, the second part of our argument, Your Honor, with the methodology. That's what he did. He rummaged. He, actually what they do is they... What should he have done in your judgment? Very simple. Ask for a warrant. No, no, no. I'm not asking about the facial validity of the warrant or lack of validity. I'm asking about the methodology for the search. Should have asked, you should have searched for that date. Now, the court, the trial court anyway, and the government says, well, you know, we may miss it. If you just search for a filter, with a filter, that's what I'm trying to say. I mean, what would you say if I say to you, as I'm saying right now, you know, it strikes me somehow as problematic for a court to get involved in the minutia of saying, well, in order to go about this in a reasonable manner, you had to start with using a date filter. I mean, that just seemed, and it seems to me that that's the kind of thing that our court in Richards was really trying hard to avoid, and rather was saying, you know, as we almost always do in Fourth Amendment cases, what is reasonable, you know, can be a variety of things, and it's going to depend on the circumstances. But if you say the only reasonable way to approach this search would have been to use a date filter, that just seems to put the court in a problematic role with respect to assessing the reasonable kind of. In fact, first, we have to know enough to know that that's probably the most directed way to go about it. Second, we have to require that all officers who search electronic devices know the narrowest way. I mean, do you see any problem at all with that from the standpoints I've outlined? I mean, you could say, no. Until about three months ago, I would agree with you that it would be problematic. However, this is an officer that testified that he hundreds or at least scores of these types of searches. And those filters are out there. This is not something that is way in the future. So what's changed in the last three months that makes you think my point is not a valid one? Well, I started reading this case. I was on this case. That's about when I got on the case, Your Honor. And my point is this. Well, is the standard what the conscientious defense lawyer would have found out? Is that the standard for the officer? No, but I think for the officer here, the officer has to follow the Fourth Amendment. And the Fourth Amendment said. And the Fourth Amendment says the reasonable, the only reasonable way to have gone about this search would have been to start with a date filter. Directly describing the items to be searched and the places. That goes again to the specificity of the warrant. Right, and there is no specificity in this warrant. Well, I know, but we're back to the first argument. Yes, well, the first argument, the one that we're talking about here, is whether or not the date filter, the date filter, that would have been a tool that they have. They have these. And as a matter of fact, the argument was, well, we may not find, it may not come up, we may not find the particular conversation that we're looking for. And that's what they were actually looking for, the audio. I don't think they were really looking for anything else. Because the audio of what the defendant, Rarick, and Officer Maeger were going through was the evidence that I think Officer Maeger was concerned about. That would have been the audio. And the audio was there, did have the data, they call it metadata, the date stamped on there. So it would have come right up. But they didn't know that, right? They didn't know, first of all, if it was video or audio. And they also didn't know whether he did anything with it so that it was buried somewhere, right? That's correct. And I understand what you're saying. They didn't know. They didn't know whether it might show up somewhere else because it was emailed or sent to a third party or any of those things. And I answer that with this, then they speculated. What they did is they speculated. They said, well, we don't have any evidence, real evidence, that he did anything. But we're going to rummage through his personal items anyway, whether or not he was even close to the date of this incident. But they didn't. And maybe I misunderstand the facts. I thought that the first thing he did was pull up whatever videos were there and then just sort of look at the thumbnails and go directly to the one that he thought was outside the building. May I answer? Please. No, that's not what happened. What happened is that the officer downloaded all of the evidence on all the files in the phone. I thought you had to do that to open them, that you had to download everything first. That's their policy. They unloaded everything onto the computer. And then what he did, instead of going for the audios, which were the first things, he skipped the audios. Skipped the audios, scrolled right through those, rummaged right through those, even though those are the ones. What do you mean by rummage? Scrolling to me isn't rummaging. Rummaging is you open them up, see if there's anything interesting there. Well, as a matter of fact, that's how he found out that there were child pornography videos and child pornography pictures. Because he did open them up. Otherwise, he couldn't see them. The files are closed. I thought the testimony was that he sort of scrolled through the thumbnails, saw what looked like the front of the building, and opened that one up, saw that it was pornography, immediately closed it, and went and got a warrant. No, my understanding of the facts, Your Honor, is that he scrolled through. And when he scrolled through, he noticed that there were thumbnails of child pornography. Then he gets to the video. And the video talks about a beige wall. Now, this beige wall that he talks about, he says, well, maybe that's the tobacco store, the beige wall. That's his excuse. The only thing is that it couldn't be. Because if you looked at what really happened at the scene, was that Rarick got out, talked to the officer. And then when the officer and him had a disagreement as to what her authority was to check his record, that's when he pulled it out and he pointed it at her. There was no wall at all. He opened that up. In other words, he did rummage, is what I'm saying. I mean, he doesn't know what your client has been doing. I mean, the fact that you might perceive that the action was occurring someplace else doesn't mean that Mr. Rarick didn't video something else that was on the scene. He could have, but that wasn't the testimony. The testimony was that he had it in his pocket, and then he took it out of his pocket. And then when there was a disagreement, then he took it out of his pocket, pointed it at her, and said he was recording it. Thank you, counsel. We will give you your five-minute rebuttal time. May it please the court, my name is Dan Ranke. I represent the government. What is the criminal activity that you were looking for on that phone, looking for evidence of on that phone? In the first warrant, obstruction of official business. All right, and what are the elements of obstruction of official business? I'm real, I'll just be up front with you. I'm really struggling with how anything that happened there falls under the way obstruction of official business would be an offense. I don't know the exact elements of Ohio's obstruction of official business. Should an Ohio officer know those elements? Yes. And what the obstruction of official business was here was Rarick disputing, arguing, failing to cooperate with the officer when she was trying to run his business. What if I were to tell you that that doesn't actually qualify in Ohio as obstruction of official business? If that didn't, let's just assume that for a moment. If that doesn't, then there ain't going to be any evidence on that phone of a crime. Because the other crime was that he was driving under suspended license, and clearly there's no evidence on that phone that goes to that crime. No. No, only as to the obstruction. And it's not a crime in Ohio, or anywhere else to my knowledge, to pull out your phone and record or video record your encounter with a police officer. Is that correct? I think that is correct. But that's not the entire obstruction. That's not what made up, that wasn't the basis for the obstruction. And the basis for the obstruction was? Him disputing with the officer whether she could even run his plate. Him disputing with the officer whether she could hold him while he was running the plate, or while she was running the plate. Him refusing to go back to his car and wait while this was being sorted out. Those were the, those were the. What if Ohio law says refusing to cooperate is not obstruction? In fact, none of the things you've just described are obstruction. What if Ohio law requires an affirmative act against the police officer? Not just say, I'm not going to, I'm not going to, I'm not going to. But an affirmative action on the part of the individual. I think there was an affirmative action. And what was that? Well, he refused to go back to the car. He refused. Well, what if there's case law that says that's not obstruction? That's refusing to cooperate. But official business, obstructing official business, as opposed to, hey, I'm not going to help you do what it is you think you're going to do to me. But getting in the way of their attempt to investigate something, that's obstruction. But that's not what he was doing. He was saying, I'm not going to do what you're telling me to. He was, in a way, getting it. He was getting in the way of what she was trying to do, to the point where she felt she had to call for backup. And why did she have to call for backup? Because he was so difficult during the stop. The officer testified, or not testified, but in the report, said he failed to cooperate in all respects in the stop. And at that point, she felt she had to call for backup. And that's why he was charged with obstruction. Not because he tape recorded the record. He was not aggressive toward her. Well, he came out. He pointed the phone at her. She didn't know what it was. And I'm not saying that the recording is obstruction. It's not. You can record. You can take out your phone and say, hey, I'm recording this. And that she objected to very strongly. Well, she asked him not to do it. But she gave him the phone back. Or he took the phone back. Took the phone back. And that's one of the things that she points to as obstruction. It's really just his complete failure to cooperate. So that's only obstruction if Ohio law says that a complete failure to cooperate is obstruction. But if it doesn't, then what is the basis for this incredibly broad search of this phone? The first warrant's only obstruction. I mean, it has to be obstruction of justice. And we submit that the facts here were he was obstructing justice. Not that he just didn't cooperate. Not that he just didn't answer questions. He was arguing he wouldn't go back. He potentially created a safety concern. He won't go back to his car. He won't sit down. He won't do anything. He sits on the hood of the car. At this point, the officer felt that she needed assistance. But the first warrant is only obstruction. But of course, at that point, she already had everything she needed for the only thing she really had against him, which was he was driving under a suspended license. Right. Why didn't she just say to him, you're driving under a suspended license. I'm sorry. You're going to have to sit in the back of my car. And I'm going to impound your car. Instead of saying, no, you can't record this. Please go do x, y, or z. Put down that phone. Give me the phone. I mean, I sound like I'm second guessing her. I guess I probably am. But when you have a completed problem, a completed offense, and you sort of create another one, and that's the basis for a very, very broad search of a phone with a warrant and an affidavit that don't even include a date, that's trouble. It really wasn't a completed offense at that point. He was arguing as well that his license wasn't under suspension, that he had cleared that up. She was trying to, what she said, sort this out, which is why she asked him to just relax. It's, quite frankly, if Mr. Rarick had cooperated and just gone and sat in his car, none of this would have ever happened. Mr. Rarick brought this on himself. It wasn't the officer arguing with him. But if the point is that every citizen has an obligation to simply do exactly what he's told by the police, then every time a citizen doesn't, then you have an obstruction offense. That's also troubling. Well, it's not that every citizen has to do exactly what they're told by the police at every moment. He is in a different situation. The officer sees the car, runs the plate, realizes who the owner of the car is and that the owner of the car's license is under suspension. At that point, she follows him into the tobacco store. And he's in a different situation now, if that's Rarick. She's trying to find out if that's even the owner of the car still. She doesn't know. All she knows is that who the owner is and that his license is under suspension. She doesn't know that's him at this point. She's just sitting outside the tobacco store. When he comes back out and confronts her, that's when the situation escalates. It's not just you do what the police officer says every minute. This person's in a different situation. I don't want to... How do you justify this broad, broad warrant? You've got the possibility, reasonable cause to believe that that phone that you've had since this whole thing may have a recording of this incident in one way or the other. How do you justify this warrant that basically says, go forth and search, whatever you can find on this phone is yours? It was a broad warrant, but the warrant was broad in the sense it was still limited to looking for obstruction of official business, but in anywhere in the phone. And I mean, that's sort of a leap, but you're getting that from the attachment and the case law. Yes. Yes. And that's really, it's not look through the phone for whatever you want, it's look for the phone, at least the first time, was look through the phone for obstruction. And it was... And the testimony was why it was so broad is because they didn't know what he had done. They didn't know if he had... If it was an audio recording, a video recording. Is that what the officer did? He didn't... Did he look for obstruction or did he first download everything? Why did he have to download everything? Well, both officer and Mr. Rarick's expert testified that... That's the way you do it. The normal way to do it is you connect it, literally physically connect the phone with the cable to the police computer, download it all into the police computer and then look through the phone, look through what was on the phone on your own computer. But how, I mean, should there be any effort? You say that the warrant only authorizes to look for evidence of obstruction, but then isn't that the way the search should be conducted, to look for evidence of obstruction or look where that evidence is likely to be found? Because otherwise, it doesn't matter what you're authorized to search, you're going to get a full search of the phone. Testimony, again, this goes back to whether you can limit the... Or go back to whether you can limit the search, like through a filter, a date filter or a time filter. Both Eisenhower and Dimitrelos testified that, yeah, you can do that, but it's not the most efficient way, it's not the most effective way, depending on how things are saved, how things are created, how they're stored. I know, but what is the answer then to the obvious question? You said he's not authorized to look for anything, he's authorized to look for evidence of this crime. Well, that's fine, but basically you're saying the way you do it is to download everything on the phone and then you can look through everything on the phone to find that. But then it's a totally meaningless qualification to say that you're looking for evidence of this crime, you're looking for everything because you're looking at everything. It's like saying that you can look through every single drawer in a house to find the elephant because the elephant could be... Because it's a computer, the elephant can be in the drawer. So it's... Why should there be no... And I agree with Judge Givens, you don't want to get into the minutiae of how you execute an electronic warrant, but why shouldn't there be some requirement that the government first look where it's likely to be? Otherwise, you can see everything. Well, I think that Eisenhower was trying to do that. He opens up on his own computer what's on the phone. He looks, and as you all talked about during Mr. Rarick's part of this argument, he sees thumbnails. Some of these files have pictures, still pictures, and some just have a... Don't they have dates? Not all of them. Some do, some don't. That was the testimony. If you don't even have a date in the warrant or the affidavit, then of course that doesn't much matter. You can say, well, we don't know what date we're looking for, so we have to look at everything. Well, the date doesn't... Again, the date might not... But aren't they downloaded in order? I mean, if you download pictures, I know the most recent ones are at the bottom. Isn't it like that with downloading the videos and the audio recordings? I don't know. To be honest, I don't know. I would assume so. So why didn't he open the last ones? He was the last one to have the phone. Well, again, he's been trained, and they're not always... Things are saved differently, and they're not always saved by date. They're not always in chronological order. They're not always, but why shouldn't you first look where it's most likely to be? I think he tried to do that. While he was going to the videos, he sees child pornography. What looks like thumbnails of child pornography. He goes to the one video that you discussed about the beige wall, thinking that might be the tobacco store. He opens it. That's a video of child pornography, and he stops. Okay, you're saying that the thumbnails were clear that they were child pornography. He said it was suspected child pornography. It looked like child pornography. So then the very fact of downloading the entire phone will show you that there's child pornography in it. Sometimes, depending on how it's stored and how it's saved and how it's created. And why do they have to download the entire phone? Because they didn't know here what he did with the... They were unsure of how this was stored, how it was created, how it was saved, whether it was deleted, whether it was emailed, whether it was stored in a manner that would somehow hide it, whether the technology on the phone was newer than what the search applet they used could find. They said that this changes so rapidly that the most efficient way to do this is to look through every file. And even Mr. Rarick's own expert said that that's how he trains people, and that's what he would do in this situation because the cell phone technology is so rapidly changing. He uses four different... Mr. Rarick's expert uses four different search programs, software programs. He says he always uses at least two because they always find different things, and you have to use two to even verify your results on the one. So basically anybody who records anything of a criminal nature on their cell phone, even as a witness, you're just subject to having the government take your phone and download it because you have evidence. No, only if they're looking for evidence of another crime, and then if in plain view, and we argued this in the brief, if the child pornography then is in plain view... Because everything is on... From what you have just told us, everything on your phone is in plain view. No, some are just blank folders. Once it's downloaded. Some are just blank, like a folder, and it just shows a folder. It doesn't show a picture. It doesn't show a thumbnail. It doesn't show anything. It shows a folder. Yeah, but anything, but maybe what you're looking for is there. They weren't opening those up. They weren't rummaging through. He was looking for obstruction of official business. And both the two people that are trained in this, Eisenhower and Dimitrelos, both concurred that this is the way to do it. Why shouldn't this warrant at least have said when this happened? When the obstruction happened? Yeah. It probably should have. Well, not probably. And why didn't the... You would think that the warrant would at least specify the sort of evidence that was intended to be obtained through the search. That was really in the affidavit and the attachment. Well, I mean, I just looked at the affidavit and it's about as broad as the... I mean, it's not a whole lot more specific than the... If you're looking for it to provide content to the warrant, all you're going to get is kind of a we want everything concluded. It probably isn't really likely that you're going to find evidence of even if the crime was obstruction in the GPS function. But that was certainly included in what was to be searched. No, Eisenhower testified that he used the language from Ohio Bureau of Criminal Investigation because he felt that they might be the ones that have to search the phone because initially he couldn't get into the phone because Mr. Merrick wouldn't give him the password. So GPS... There's probably a couple others. So in other words, you're agreeing that it was a very, very broad warrant without any particular relation to the crime alleged? It was a broad warrant, but I do think it had a particular relation to the crime alleged. I really wouldn't have expected you to agree with me. Okay, thank you. Thank you. Rebuttal? Thank you, Judge. If the court, and I'm sure the court has looked by now, but if you look at the affidavit numerical paragraph number six, all other fruits and instrumentalities of crime at the present time unknown. It doesn't say the crime, it says crime. Let me ask two things. The child pornography was found among the No, I think it was the video. Video, what they were talking about. Pictures, whether video or whether... If I may, he scrolled through the audios, scrolled through the they call them JPEGs, those are the pictures, and scrolled into the videos. So what Eisenhower did was he actually seized the evidence by putting it onto his computer and then he inspected all of the evidence just by going from the the audios, the pictures, to the videos. And that's when he saw the beige picture. I'm sorry I interrupted you. Well, the point is that what he, the child pornography was basically in something he'd have been authorized to search for anyway had the warrant been a whole lot more specific. I disagree. You don't have to, that's a policy. The policy was to download everything onto the computer. I understand that, but wouldn't you under, the only, I'm not sure it makes a difference in the legal analysis but under, if this warrant had been obtained in the narrowest possible form you would have been entitled to, you an officer would have been entitled, no matter how you did it to look at video evidence and to look at photographic evidence. That's the only point I'm making. It would have been that type of evidence limited to the date. The date of February 14th. But didn't your expert say it could be buried anywhere? Could be, but it wasn't in this case. Can I ask one more question? Yes. Your argument is not that probable cause did not exist for the offense of obstructing official business or whatever it is under Ohio law. Is that right? After I heard Judge Backhelder that's correct. It's not but the actions, you know, the probable cause action Or your argument is not that the facts alleged don't amount to the offense that is indicated. I don't believe so. I think if this would have went to trial just on that it would have been a hard press for the state to win the case. That's not exactly what I asked you. There was something there he was arguing with the police officer he was arguing, but I think it was kind of borderline whether or not he actually had any, it was even close to committing the crime that he was being accused of The court asked about the elements shall do any act that hampers or impedes a public official in the performance of the public official's duty those are the elements, your honor and I'm not quite sure it existed here I think he was trying to get out of it, he was trying to get out of the ticket. Actually I think it was a little bit deeper because I think he had some mental problems and I said this, it was a cry for help because of what he was going through at the time, but in this situation this is about the broadest search warrant that I've ever seen and not only do we have the words in there saying we want to see everything in there, we have the police officer who's supposed to be specific, saying that he, it was his intent, that's what he wanted to do, he wanted to search everything whether it was related or not to the case. And who said that? The officer He was Yes, Eisenhower asked for the right to search everything on this phone transcript RE54 ID 400 lines 10 to 12 He made no bones about it and you're right, that's how they're trained and they're trained incorrectly And are they not trained that way? In part because so often when they're searching a phone, the phone is an instrumentality of the crime that they're investigating I would disagree Your Honor, I think that they teach them that because they just want to make sure that they see everything they can on the phone, which I think is in violation of the 4th Amendment, and I think the way that this lawyers are supposed to respect the 4th Amendment so are the police officers and they're supposed to be particular in what they do and in this situation, he wasn't I mean, what Judge Batchelder says though is quite true I mean, you think about a phone that's been used in drug dealing you're going to find all kinds of stuff in all kinds of places, you're going to find call history, which is very significant, you can find voicemails, I've seen plenty of photographs of drug dealers taking pictures of themselves dripping with jewelry or whatever it is I mean, there's there's just a lot of different ways location information I mean, that's a different situation from this one in terms of the discreet nature of the evidence I agree with you 100% you know, in those crimes where they're investigating a conspiracy, 20 or 30 people involved, going months at a time those kinds of cases, you want to have a wide span, but in this case we have a misdemeanor too obstructing official business we're talking about whether or not there was probable cause even to arrest them for obstructing official business and there was such an easy way in fact, he came there he actually went there, said he would aid the police officer and tracking down the date and the police officer says, nope I can't have you do that you can't be here when I'm looking at it, that's not policy and I guess my point is is that if there's something left for the Fourth Amendment in cell phone cases you have to have some degree of specificity, particularity in this case there is none and did your expert agree though to the practice of downloading everything and then looking? He said that was a way to do it he says that is what they teach the police officers how to do it, and he said it was the most he didn't say reasonable he said it was like the most efficient way of doing it which I agree, the most efficient way of doing it is downloading everything and going but that is not the most reasonable when you have a privacy right like the Fourth Amendment Thank you counsel, the case will be submitted remaining cases are on the briefs you may adjourn the court Thank you Thank you Thank you Thank you